### WONG YUEN v. PRENTIS, Immigration Inspector.

(Circuit Court of Appeals, Seventh Circuit.   April 11, 1916.)

#### No. 2308.

1. ALIENS ⬅54—CHINESE PERSONS—DEPORTATION.

To deport a Chinese person on the ground of his being in the United States in violation of Immigration Act Feb. 20, 1907, c. 1134, 34 Stat. 898 (Comp. St. 1913, §§ 4242–4289), in that he was a person likely to become a public charge and that he entered without inspection, it must appear that deportation proceedings were begun within three years after his entry.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ⬅54.]

2. ALIENS ⬅54—ENTRY—UNLAWFUL ENTRY.

That a Chinese person was found in a freight car billed and sealed from a point in New York, and passing thence into and out of Canada and lack into the United States, after the car returned to the United States, does not show that the Chinese person entered the United States in violation of law.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ⬅54.]

3. ALIENS ⬅54—DEPORTATION—UNLAWFUL ENTRY.

Proof that a Chinese person had been deported in November, 1910, for attempting to enter on a fraudulent certificate, does not show, nearly four years later, that his subsequent entry into the United States was within three years of the institution of proceedings for his deportation.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. ⬅54.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Petition by Wong Yuen for a writ of habeas corpus against P. L. Prentis, Immigration Inspector. From an order dismissing the writ and remanding petitioner, he appeals. Reversed, and cause remanded, with directions to discharge petitioner.

Wm. R. Medaris, of Chicago, Ill., for appellant.

Chas. F. Clyne, M. L. Igoe, and Benjamin Epstein, all of Chicago, Ill., for appellee.

Before KOHLSAAT, MACK, and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge.   [1] In a proceeding under the Immigration Act, the Secretary of Labor ordered the deportation of ap-

_____

pellant, a Chinese, on the ground of his being in the United States in violation of the Immigration Act of February 20, 1907, as amended, in that he was a person liable to become a public charge at the time of his entry into the United States, and that he entered without the inspection contemplated by said act. Section 36, rule 12. Writ of habeas corpus to obtain his release was dismissed by the District Court, and the petitioner was ordered remanded, such action of that court being involved in this appeal. Being brought under the procedure of the Immigration Act, we are met at the outset with the question whether there is evidence from which it may be fairly concluded that the proceedings were begun within three years of petitioner's entry into the United States, an essential prerequisite in proceedings under that act, as we held in Moy Wing Sun v. Prentis, No. 2273, 234 Fed. 24, —— C. C. A. ——.

Petitioner claims he was born in the United States, and that he never departed therefrom. That he lived at Chicago quite a number of years, prior to about 4 years before his arrest, is without contradiction shown by the evidence. He maintains that on leaving Chicago he went to Boston, remaining there until, traveling west and intending ultimately to go to Chicago, he was arrested at Gary, Ind. The government contends that he, with two other Chinese, was taken from a sealed Wabash Railroad freight car, which had started from New Jersey, passed into Canada, and again back into the United States at Detroit, on its way to Chicago; that at Gary one of the trainmen became aware that there were persons inside of the car, and upon opening the car found petitioner and the other two, and had them placed in jail. Petitioner testified he was not in any freight car at all, but that he came to Gary on a passenger train, and was walking along the railroad tracks when arrested.

No evidence was offered to prove this contention of the government, save that on the hearing Mr. Ebey, an immigration inspector before whom the hearing was had, and who also conducted it on the part of the government, made the following offer:

"The government offers in evidence the transcript of an examination of R. H. Deadman and C. M. Ritchey made in the immigration office September 22d, and advises counsel for the alien that, if he desires to submit any counter statement from these witnesses, it will be received in evidence."

The statements appear to be an unsigned transcript of what purport to be stenographers' notes of some conversation with Mr. Ebey, or examination by him, out of the presence of the accused or any one representing him, some days prior to his hearing. The statement recites that Deadman was sworn, but no certificate of any oath appears, nor anything to indicate who administered the oath. It does not appear that Ritchey was sworn at all.

These men were Wabash train employés, running through Gary, and probably to Chicago, and it is fair to presume that, had the government desired, they would have been present at the hearing, quite regardless of whether or not their attendance could have been compelled. Where the issue is far less grave than the right to reside in this country of a human being claiming to be a citizen thereof, witnesses are

frequently and properly brought long distances and at much expense to testify. The use by the government of ex parte statements of persons whose oral testimony would have been conveniently, readily, and inexpensively available might bear on the fairness of an administrative hearing such as this. Mr. Ebey's proposal to receive in evidence any counter statement of these men which counsel for the Chinese might succeed in procuring, while probably made in good faith and as an intended act of grace, did not confer a privilege of any appreciable practical benefit.

[2] But the statements themselves merely say that three Chinese were taken from the car. Petitioner was not identified as one of those so taken. Some photographs of Chinese were submitted to Deadman, who said Chinamen all looked alike to him. Deadman says the car was originally billed from Hoboken, N. J., and rebilled from Black Rock, N. Y. If sealed at one of these places, and the seal was first broken at Gary, Ind., then petitioner entered the car in the United States and remained in it continuously till he left it in the United States, and the fact that the car en route passed into and out of Canada would not of itself make unlawful petitioner's entry into the United States.

Petitioner may have lied in saying he came to Gary on a passenger train, but it is not material whether he came thus or by freight; and, besides, proving him a liar does not of itself show his entry into this country within three years of his arrest.

[3] It is claimed that he answers the description of a Chinese who was deported in November, 1910, for attempting to gain entry on a fraudulent certificate. But that deportation took place nearly four years before this arrest, and does not prove petitioner entered within three years before his arrest on the charge here in issue.

There is an entire want of evidence to show that the petitioner's arrest was within three years of his entry into the United States, and we therefore hold invalid this deportation proceeding under the Immigration Act.

The order of the District Court, dismissing the writ of habeas corpus and remanding the petitioner, is reversed, and the cause is remanded, with direction to the court to discharge the prisoner.